(No. 22029.—

WILLIAM DAY, Plaintiff in Error, *vs.* THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY, Defendant in Error.

*Opinion filed December 22, 1933.*

JOHN E. CASSIDY, for plaintiff in error.

NELSON J. WILCOX, and MILLER, ELLIOTT & WESTER-VELT, for defendant in error.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The plaintiff in error (hereinafter called the plaintiff) brought suit in the circuit court of Peoria county against the defendant in error (hereinafter called the defendant) to recover damages for personal injuries sustained by him while in the employ of the defendant. The declaration consisted of one count, and charged, in substance, that the plaintiff was employed in the shops of the defendant at South Pekin, Illinois; that the defendant was engaged in the business of commerce by rail, commonly known as interstate commerce, and was subject to the provisions of the Federal Employers' Liability act; that on the 21st day of February, 1929, the plaintiff was working upon a locomotive of the defendant which had been used in interstate commerce and which defendant, after making repairs thereon, intended to return to and engage in interstate commerce; that while so working upon the locomotive the plaintiff was injured through the negligence of the defendant by one of its servants, and by reason of such injury the plaintiff lost his right arm. To the declaration the defendant filed the plea of general issue, together with

notice of proof of assumption of risk and contributory negligence. A verdict was returned in favor of the plaintiff in the sum of $35,000. Motions for new trial and in arrest of judgment severally interposed by the defendant were each overruled and judgment was entered on the verdict.

At the close of the evidence the defendant made its motion to instruct the jury to find for the defendant, and tendered with its motion an appropriate instruction to that effect. The motion was denied and the instruction refused. No other instructions were requested by the defendant and none were given on its behalf. An appeal was taken by the defendant from the judgment to the Appellate Court for the Second District. That court reversed the judgment of the lower court without remanding the cause. The case has been brought to this court upon *certiorari.*

The record shows that the locomotive in question was sent to the shops of the defendant in South Pekin on February 14, 1929, to have heavy repairs made upon it; that it was in the round-house until March 16, 1929, on which date the repairs were completed and the locomotive was taken out on a trial trip; that from February 14, when the locomotive entered the round-house, until March 16, it was incapable of being used in transportation. Seven days after the engine entered the round-house, and twenty-two days before the repairs were completed, the plaintiff, who was then and there a machinist in the employ of the defendant at such shop, while attempting to replace a radius bar on the right side of the engine, got the bar caught and was unable to release it, and while attempting to release the bar for the purpose of putting it in place, another employee of the defendant, knowing nothing of the situation, started a cylinder-boring bar in operation on the opposite side of the engine. This caused a vibration which shook the radius bar loose, caught the defendant's hand, which was resting on a part of the engine, and injured him. The evidence shows that the plaintiff was ordered to work upon the loco-

motive by his foreman, who told him, in substance, that he, the foreman, was anxious to get the work done so as to get the locomotive back on its regular run. Its regular run was an interstate transportation run.

It was stipulated on the trial of the case that the defendant was engaged in interstate commerce; and that the locomotive in question, immediately prior to the time that it was brought into the shops, was engaged in interstate transportation. It is claimed by the plaintiff that this stipulation amounted to an admission that the plaintiff was engaged in the work of interstate transportation at the time he was injured. We do not so construe the stipulation. The Federal statute under which the suit is brought, so far as it is material to the question here under consideration, provides as follows: "Every common carrier by railroad while engaged in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce." 35 Stat. at Large, 65, chap. 149; chap. 2, sec. 51, U. S. C.

It is urged by the plaintiff that as the defendant filed the plea of general issue and no special plea denying its liability in the case at bar, under the Federal statute the plea of general issue admits not only the ownership and possession of the instrumentality through which the plaintiff was injured and that the plaintiff and the defendant were engaged in interstate commerce, but also that the plaintiff received his injuries while he at the time was engaged in interstate commerce or that his work was so closely related to interstate commerce as to be practically a part thereof. The decision of that issue becomes highly important in the ultimate decision of the case. The plea of general issue, in the absence of any special plea, admits the ownership of the railroad and of the locomotive upon which the plaintiff was working.

The plaintiff has cited several cases in support of the proposition advanced by him that the plea of general issue

not only admits the facts last above mentioned, but also the further important factor in the case that the instrumentality upon which he was then and there working at the time of his injury was, at that time, engaged in interstate commerce. The authorities cited, in our opinion, do not go as far in their holdings as the plaintiff claims. None of the authorities cited by him hold that the plea of general issue admits that the instrumentality through which the plaintiff was injured was at the time of his injury an instrumentality then and there engaged in interstate commerce. Neither do they hold that the defendant in a case of this nature must specially plead that the engine on which the plaintiff was working at the time he was injured was not at that time engaged in interstate commerce. The plea of general issue puts in issue every material allegation of the declaration. (*Beveridge* v. *Illinois Fuel Co.* 283 Ill. 31; *Curtiss* v. *Martin,* 20 id. 557; *VanDusen* v. *Pomeroy,* 24 id. 289; *VonBoeckmann* v. *Corn Products Refining Co.* 274 id. 605.) If the plaintiff at the time of his injury was not engaged in interstate transportation, he would then, of course, come under the State Workmen's Compensation act.

It is not necessary in a common law action on the case brought to recover damages for personal injuries, that the defendant shall specially plead that the recovery of the plaintiff, if any, is under the Workmen's Compensation act and that a suit at common law will not lie. Proof that the parties come under the Workmen's Compensation act may properly be offered under the plea of general issue. (*Beveridge* v. *Illinois Fuel Co. supra.*) In *Condon* v. *Schoenfeld,* 214 Ill. 226, this court held in an action on the case, where it was averred in the declaration that the party causing the injury to the plaintiff was a servant of the defendant and the plea of not guilty was the only plea filed, that the plaintiff having made the charge in his declaration that he was injured through the negligence of a servant, agent or employee of the defendant, was required

to prove that fact. In this case the plaintiff having averred, in substance, in his declaration, that he and the defendant at the time of the injury were both engaged in interstate commerce and that his injury was occasioned while he was engaged in interstate transportation of commerce, the burden of proof was then upon him to prove such charge. At the time of the trial in the circuit court the plaintiff's counsel evidently had the same view as to the issues made by the plea of not guilty as we have expressed on this subject. The jury were instructed, at his request, that the plaintiff had the burden of proving that at the time he was injured he was an employee of the defendant, and that he was then engaged in work of interstate commerce character and upon an instrumentality engaged in the transportation of such commerce.

Numerous errors are assigned upon the record of the court below by the defendant, while the plaintiff has assigned in this court numerous errors upon the record of the Appellate Court. In the view we take of the case the disposition of the issue made by the pleadings as to whether the plaintiff, at the time he was injured, was engaged in interstate transportation, or that his work was then and there so closely related to it that his work was practically a part thereof, is conclusive of the case. In passing upon this issue this court is controlled by the decisions of the Federal courts upon this Federal statute, regardless of any decisions or views of the State court upon that subject. *Chesapeake and Ohio Railway Co.* v. *Kuhn,* 284 U. S. 44, 76 L. ed. 157; *Chesapeake and Ohio Railway Co.* v. *Martin,* 283 id. 209, 75 L. ed. 983; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Coogan,* 271 id. 472, 70 L. ed. 1041.

Not every employee of an interstate carrier is engaged in interstate commerce, and the burden is upon the plaintiff who charges in his declaration that he comes within the provisions of the Federal Employers' Liability act to prove such allegation. (*Chicago and Alton Railroad Co.*

v. *Industrial Com.* 290 Ill. 599; *Illinois Central Railroad Co.* v. *Industrial Board,* 284 id. 267.) The correct test in determining whether the plaintiff comes within the provisions of the Federal act is whether he was, at the time he was injured, engaged in the work of interstate transportation or some branch of endeavor so closely connected with it that it was for all practical purposes a part of such work. There is no dispute in the evidence as to the instrumentality upon which the plaintiff was working at the time he was injured or the character of the work in which he was then engaged. There is a broad distinction between the application of the rule to fixed objects, such as bridges, tracks and road-beds used in interstate transportation where the employee is injured, and a machine that may or may not be used in interstate transportation and by means of which instrumentality the employee is injured. The locomotive, at the time the plaintiff was hurt, was an inactive object, incapable of moving or traveling under its own power. While it is true that at the time the locomotive came into the round-house it had been used in interstate transportation and was expected to be returned to interstate transportation, yet that fact, under the rule stated, is not sufficient in itself to make it an instrumentality of interstate transportation at the time the plaintiff was maimed. The case presented is not a case in which a locomotive is pulling a train in interstate transportation and while on such trip an accident happens to the locomotive and it is repaired en route so that it may complete the trip, but in the case at bar we have a locomotive that at the time the injury happened to the plaintiff was not engaged in transportation of any kind but was unable to transport anything whatsoever. It then had no tractive power.

All the work by employees of an interstate road is in a sense necessary to the operation of the road and they are all more or less connected with interstate commerce. The mere fact, however, that an employee is working for

a railroad that is engaged in interstate transportation and his labor is necessary to the successful carrying on of interstate transportation on the part of the railroad company does not of itself bring such employee within the purview of the act, but as to whether he is in such interstate transportation is to be determined from the character of the work he is performing and the use of the instrumentality by the railroad company at the time of the injury to the employee.

In the case of *New York, New Haven and Hartford Railroad Co.* v. *Bezue,* 284 U. S. 415, 76 L. ed. 370, an employee of the railroad company was injured while working upon a locomotive of the company. The Supreme Court held that the railroad company was not liable under the Federal Employers' Liability act. The facts in that case show that such engine was always used in interstate traffic. It was the custom of the company to send locomotives engaged in interstate traffic into its shops at the end of thirty days' service to have the boilers washed. On August 23, 1929, a locomotive was sent to the shops for the customary thirty-day boiler-wash. Inspection was there made of the engine before the boiler-wash was made and orders were given for certain repairs. Amongst the repairs ordered was the removal of the main driving wheels and shifting them to the hoist shop so that a journal might be turned. The fire was dumped from the engine and the main driving wheels were removed and sent to the machine shop. The boiler-wash and repairs consumed ten days. On the 9th day the turning of the journal on the main drivers had been completed. The plaintiff on that day, on the order of his foreman, was engaged with other laborers in removing the main driving wheels from the lathe at the hoist shop, placing them on a track and pushing them by hand to a turn-table which was then connected with another track, onto which the employees, including the plaintiff, pushed the wheels preparatory to moving them

to a pit in the round-house where they could be placed under the locomotive. During this work the plaintiff was injured through the negligence of the foreman in removing a block from under the wheels. The court said in that case: "Under the circumstances of this case, whether the respondent is within the act must be decided not by reference to the kind of plant in which he worked or the character of labor he usually performed, but by determining whether the locomotive in question was at the time of the accident in use in interstate transportation or had been taken out of it. The length of the period during which the locomotive was withdrawn from service and the extent of the repairs bring the case within the principle announced in *Industrial Accident Com.* v. *Davis*, 259 U. S. 182, 66 L. ed. 888, 42 Sup. Ct. 489, and *Minneapolis and St. Louis Railroad Co.* v. *Winters*, 242 U. S. 353, 61 L. ed. 358, 37 Sup. Ct. 170, Ann. Cas. 1918B, 54, 13 N. C. C. A. 1127, and stamp the engine as no longer an instrumentality of or intimately connected with interstate activity."

In *Industrial Accident Com.* v. *Davis, supra,* the facts were as follows: While the plaintiff was drilling and tapping the boiler of a locomotive a piece of steel lodged in his left eye. This injury was sustained by him in the course of his employment and caused thereby and occurred while he was performing service growing out of and incidental to the same. The engine upon which he was working at the time he was hurt had been sent to the shops from exclusive employment in interstate commerce. It arrived in the shops for a general overhauling on December 1, 1918, and was to a certain extent stripped and dismantled. It was expected that the work upon it would be finished by January 31, 1919, but it was not actually completed until February 25, 1919. The accident occurred on February 1 of that year. After the repairs were finished the engine was given a trial trip and finally put into service in interstate commerce. The Supreme Court held that the plain-

tiff was not engaged in interstate commerce and that his recovery should be under the Workmen's Compensation act of the State of California. Recovery of damages was denied the plaintiff in that case.

The plaintiff herein was not engaged in interstate transportation at the time he was injured. *New York, New Haven and Hartford Railroad Co.* v. *Bezue, supra; Industrial Accident Com.* v. *Davis, supra; Shanks* v. *Delaware, Lackawanna and Western Railroad Co.* 239 U. S. 556, 60 L. ed. 436; *Minneapolis and St. Louis Railroad Co.* v. *Winters,* 242 id. 353, 61 L. ed. 358; *Chicago and Northwestern Railway Co.* v. *Bolle,* 284 id. 74, 76 L. ed. 173; *Chicago, Burlington and Quincy Railroad Co.* v. *Harrington,* 241 id. 177, 60 L. ed. 941; *Delaware, Lackawanna and Western Railroad Co.* v. *Yurkonis,* 238 id. 439, 59 L. ed. 1397; *Illinois Central Railroad Co.* v. *Behrens,* 233 id. 473, 58 L. ed. 1051; *Chicago, Rock Island and Pacific Railroad Co.* v. *Cronin,* 176 Pac. 919; *Payne* v. *Wynne,* 233 S. W. 609; *New Orleans and Northeastern Railroad Co.* v. *Beard,* 90 So. 727; *Chesapeake and Ohio Railway Co.* v. *Mizelle,* 118 S. E. 241; *James* v. *Chicago and Northwestern Railway Co.* 211 N. W. 1003.

The plaintiff, in support of his position that at the time of his injury he was engaged in interstate transportation, cites and relies upon *New York Central Railroad Co.* v. *Marcone,* 281 U. S. 345, 74 L. ed. 892, and *Industrial Accident Com.* v. *Davis, supra.* The last cited case we do not believe supports the plaintiff's position. In fact, it is quite persuasive in leading one to the belief that he was not in interstate transportation at the time he was injured. In the *Marcone case* the plaintiff's intestate had just completed oiling a locomotive which had shortly before entered the round-house after completing an interstate run. This locomotive was standing on track 7, adjacent to track 8 on its left. The foreman instructed the deceased, after completing his work on the locomotive, to wait for him

at the inspection wagon, which was located on the concrete runway between tracks 7 and 8. The body of the deceased employee was shortly thereafter discovered lying on the right rail of track 8, underneath the trucks of the tender of engine 3709, which was being backed on track 8 from the round-house to the turn-table. There was no eye-witness of the accident.

The Supreme Court of the United States specifically distinguishes the *Marcone case, supra,* in *New York, New Haven and Hartford Railroad Co.* v. *Bezue, supra,* upon the point that in the *Marcone case* the deceased employee was, at the time he was killed, actively engaged in working on an instrumentality at the very time intimately connected with interstate transportation, while in the *Bezue case* the locomotive through which the plaintiff was injured was not at that time either an instrumentality of or intimately connected with interstate activity.

It is contended by the plaintiff that inasmuch as this case was tried before a jury the Appellate Court had no legal right to reverse the case without remanding it. The case at bar is not a case where it is a mixed question of law and fact as to whether the plaintiff is guilty of contributory negligence or the lack of due care and caution. There is no dispute about the facts. The legal conclusion is to be drawn from the facts. No weighing of the evidence is necessary here, but the issue is whether or not under the law, the facts being admitted, the plaintiff has proved the material allegation made by his declaration that he comes within the scope of the Federal Employers' Liability act. To determine that fact it is not necessary for the court to weigh any conflicting evidence. The judgment of the Appellate Court is not based upon any finding of facts but is based upon the application of a principle of law. The trial court would have been justified in directing a verdict for the defendant because the evidence did not tend, as a matter of law, to establish the cause of ·

480

action laid in the plaintiff's declaration. The Appellate Court was justified in reversing the judgment of the lower court without remanding the case. *Mirich* v. *Forschner Contracting Co.* 312 Ill. 345.

The judgment of the Appellate Court was correct, and should be, and is, affirmed.

*Judgment affirmed.*